IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,225

STATE OF KANSAS,
*Appellee*,

v.

PATRICIO SABAS GOMEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

If a defendant claims a jury instruction contained an alternative-means error, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will view the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless.

2.

When an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision.

3.

When a statute expressly includes "attempt" as part of the crime, the general attempt statute, K.S.A. 21-5301(a), does not apply. When a statute does not expressly include "attempt" as part of the crime, K.S.A. 21-5301(a) acts as a default rule to prosecute someone for attempting that crime.

1

4.

The definitions in K.S.A. 21-5701 apply only to statutes in Article 57 of the Kansas Criminal Code.

5.

The definitions in K.S.A. 21-5111 apply to the entire Kansas Criminal Code, unless the particular context clearly requires a different meaning.

6.

An acquittal of direct responsibility for the underlying felony does not vitiate the conviction of felony murder based on the underlying felony.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Oral argument held September 11, 2024. Opinion filed January 10, 2025. Affirmed in part, vacated in part, and remanded with directions.

*Emily Brandt*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: This is Patricio Sabas Gomez' direct appeal following his convictions for first-degree felony murder, attempted distribution of methamphetamine, and criminal possession of a weapon. Gomez raises three issues on appeal. First, he argues the State failed to present sufficient evidence of each alternative underlying felony it relied on to support his felony-murder conviction. Next, Gomez argues the State failed to present sufficient evidence to support his conviction for attempted distribution of

methamphetamine. Finally, he claims that his sentence for attempted distribution of methamphetamine is illegal.

We affirm Gomez' convictions. The State presented sufficient evidence of each alternative underlying felony it relied on to support Gomez' felony-murder conviction, as well as sufficient evidence to support his conviction for attempted distribution of methamphetamine. But Gomez is entitled to sentencing relief due to the district court's imposition of an illegal sentence for his attempted distribution of methamphetamine conviction. As a result, this court must vacate that portion of Gomez' sentence and remand to the district court for resentencing.

FACTUAL BACKGROUND

On the evening of September 30, 2021, Danielle Hampton called 911 to report that her boyfriend, Michael Martinez, had been shot at the Extended Stay Hotel in Wichita. Upon arrival, law enforcement discovered Martinez' body lying in the entryway of a hotel room with three 9-millimeter shell casings nearby. Martinez was pronounced dead at the scene. His cause of death was a gunshot wound to his back. Inside the hotel room, law enforcement found about 1 gram of a white crystal substance, later determined to be methamphetamine, on an ironing board and on an end table between the bed and the closet.

Following law enforcement's investigation, the State charged Gomez with one count each of first-degree felony murder, attempted distribution of methamphetamine, attempted aggravated robbery, and criminal possession of a weapon. To support the felony-murder charge, the State alleged Gomez killed Martinez while committing the inherently dangerous felonies of attempted distribution of methamphetamine or attempted aggravated robbery.

3

Gomez entered a guilty plea to the criminal possession of a weapon charge, and the case proceeded to a jury trial on the remaining charges. At trial, the State presented evidence of a drug deal gone wrong that resulted in Martinez' death. As support for this theory, the State primarily relied on witness testimony from Hampton and Shae Roberts, who were both present when Martinez was killed.

Hampton testified that in September 2021, she and Martinez had been staying at the hotel and were struggling with methamphetamine addiction. Hampton said Martinez was involved in a forgery/identity theft scheme to fund his addiction. On September 30, 2021, Martinez contacted a friend, Roberts, through Facebook Messenger to buy methamphetamine. When Roberts arrived at the hotel, Hampton went downstairs to let her inside. A man, later identified as Gomez, was with Roberts. Hampton did not know Gomez but let them both inside and they followed her upstairs. Once inside the room, Hampton noted that Martinez appeared to know Gomez.

Hampton went into the bathroom, as she often did during Martinez' drug deals. After several minutes, Hampton heard the others laughing and joking, so she came out of the bathroom. Martinez was sitting on the bed while Gomez and Roberts stood in the kitchen area. On a nearby table, Hampton saw some methamphetamine on a scale. Martinez was on his phone attempting to transfer $60 to Gomez through Cash App as payment for the drugs. Hampton tried to help Martinez with the transaction, but the cash transfer never went through.

According to Hampton, Gomez grew agitated, pulled a gun from his jacket, and said, "[Y]ou know why I'm here." Gomez accused Martinez and Hampton of extorting from Roberts her clothes and profile documents she possessed that contained other people's personal identifying information like social security numbers, addresses, and birthdates. Gomez said he wanted the profiles back, so Martinez started getting them out

4

of the closet. Gomez then told everyone to stop and, while turning to face Hampton, apologized to her, saying she was "at the wrong place at the wrong time." While Gomez was focused on Hampton, Martinez tried to take the gun from Gomez, and the men wrestled in the kitchen area. Hampton heard two gunshots. The wrestling continued until Martinez, realizing he had been shot, moved into the closet. Gomez fired several more shots before he and Roberts ran out of the room, leaving the door open behind them. When Martinez came out of the closet to shut the door, Hampton noticed he had been shot in his back. Martinez fell to the ground and was dead by the time Hampton found the phone to call 911.

Roberts testified for the State pursuant to a plea agreement in which she pled guilty to voluntary manslaughter and attempted distribution of methamphetamine. Roberts met Gomez through a mutual friend and had known him for a few months at the time of Martinez' murder.

On September 30, 2021, Gomez asked Roberts if she knew anybody who "needed work." Roberts understood "work" to mean methamphetamine. Later that day, Martinez contacted Roberts and said he "needed work." Roberts had known Martinez for six months; she braided his hair and occasionally sold him methamphetamine. Roberts told Gomez that Martinez needed a "T-shirt," which meant 1.75 grams of methamphetamine. Roberts said she went with Gomez to the hotel because Martinez had her laptop computer and was fixing her iPads, and she wanted to get them back. Roberts denied that she took Gomez to the hotel to "strong-arm" Martinez into returning her things.

At the hotel, Hampton let Roberts and Gomez into the room where Martinez was waiting. Once inside, Hampton went into the bathroom. Roberts had a scale and a clear Ziploc bag of methamphetamine inside her purse. To verify the agreed-upon amount of 1.75 grams, Roberts weighed the methamphetamine at a coffee table at the foot of a pull-

5

out couch and placed the remaining amount back in her purse. Roberts denied giving the drugs to Martinez after she weighed them, claiming she left them on the scale while Martinez "was looking for something to put them in." Roberts said the mood in the room appeared normal, and there was no tension between Gomez and Martinez at that time. Martinez then tried to transfer money through Cash App to pay for the drugs, and Hampton's attempts to help with the transfer were unsuccessful. At some point, the tone of the conversation changed, and Gomez grew angry. Gomez asked Martinez about his gang affiliation and accused Martinez of scamming his mother with "hot checks."

Roberts claimed she did not see anyone with a gun but heard a gunshot and then saw Martinez lunge toward Gomez before more shots were fired. After the gunfire stopped, Roberts and Gomez ran out of the room and left the hotel in Gomez' truck. When she fled the room, Roberts took her purse and the scale but left the methamphetamine on the coffee table, probably on top of the scale's lid. Once inside the truck, Roberts saw that Gomez had a gun. Roberts did not find out until later that Martinez had been shot.

The jury found Gomez guilty of first-degree murder and attempted distribution of methamphetamine but found him not guilty of attempted aggravated robbery. The district court imposed a life sentence without the possibility of parole for 620 months, concurrent to a 78-month prison term for attempted distribution of methamphetamine and an 8-month prison term for criminal possession of a weapon.

Gomez directly appealed his convictions to this court. Jurisdiction is proper. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 22-3601); K.S.A. 22-3601(b)(3)-(4) (life sentence and off-grid crime cases permitted to be directly taken to Supreme Court); K.S.A. 21-5402(b) (first-degree murder is off-grid person felony).

ANALYSIS

Gomez raises three issues on appeal. He argues: (1) the State presented alternative means of committing felony murder but failed to produce sufficient evidence to support each alternative means, (2) the evidence was insufficient to support his conviction for attempted distribution of methamphetamine, and (3) the district court imposed an illegal sentence for his attempted distribution of methamphetamine conviction. We address each argument in turn.

1. *Alternative Means*

When the State charges a defendant with a crime that can be committed in more than one way, we refer to it as an alternative-means crime. *State v. Reynolds*, 319 Kan. 1, 4, 552 P.3d 1 (2024). A district court presents the jury with an alternative-means crime when it instructs on a charged offense that provides multiple ways in which the jury could find the State proved a single statutory element. 319 Kan. at 4-5.

Here, the State charged Gomez with first-degree felony murder, alleging he killed Martinez "while in the commission of, attempt to commit, or flight from an inherently dangerous felony, to wit: Distribution of Methamphetamine or Aggravated Robbery." Gomez argues the evidence was insufficient to support a finding of guilt on each of the alternative means on which the jury was instructed—attempted distribution of methamphetamine and attempted aggravated robbery.

a. *Standard of review and relevant legal framework*

Until recently, this court has typically viewed alternative-means issues as implicating questions of jury unanimity and reviewed those issues under a sufficiency of

7

the evidence standard. See, e.g., *State v. Smith*, 317 Kan. 130, 132, 526 P.3d 1047 (2023) (alternative-means issue "implicates whether there is sufficient evidence supporting the conviction"); *State v. Wright*, 290 Kan. 194, 206, 224 P.3d 1159 (2010) (requiring super-sufficiency of the evidence "to ensure a criminal defendant's statutory entitlement to jury unanimity"), *overruled by Reynolds*, 319 Kan. 1. Under our prior precedent, when a defendant raised an alternative-means issue, a reviewing court applied a super-sufficiency of the evidence test. To avoid reversal, the State was required to present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. *Wright*, 290 Kan. at 202-06.

But while Gomez' case was pending, this court decided *Reynolds*, which altered our review of alternative-means issues. By overruling *Wright* and cases following it, we no longer require super-sufficiency of the evidence. We now review alternative-means issues as challenges to jury instructions subject to instructional error reversibility standards:

> "If a defendant claims a jury instruction contained an alternative means error, the reviewing court must consider whether the instruction was both legally and factually appropriate. The court will use unlimited review to determine whether the instruction was legally appropriate and will view the evidence in the light most favorable to the requesting party when deciding whether the instruction was factually appropriate. Upon finding error, the court will then determine whether that error was harmless, using the test and degree of certainty set forth in [*State v.*] *Plummer*, 295 Kan. 156, 283 P.3d 202 [2012], and [*State v.*] *Ward*, 292 Kan. 541, 256 P.3d 801 [2011]." *Reynolds*, 319 Kan. at 17.

Although Gomez did not challenge the jury instructions at trial or allege instructional error on appeal, we do not fault him because the parties filed their briefs before our decision in *Reynolds*. Even so, "when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are

pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013). Thus, we review Gomez' alternative-means argument as a challenge to the legal and factual appropriateness of the jury instruction setting forth the elements of felony murder. See *Reynolds*, 319 Kan. at 13. ("[A]ny argument there was insufficient evidence to support each alternative means presented actually challenges the instruction's factual appropriateness.") (citing *State v. Wimbley*, 313 Kan. 1029, 1033, 493 P.3d 951 [2021]) ("'Factual appropriateness depends on whether sufficient evidence . . . supports the instruction.'").

   b. *Discussion*

When reviewing an alternative-means issue, the appellate court first considers whether the district court presented an alternative-means crime to the jury in the instructions. If so, the reviewing court advances to an error analysis to determine whether the instruction was both legally and factually appropriate. Upon finding error, the court must decide whether that error was harmless. *Reynolds*, 319 Kan. at 17.

The State charged Gomez with first-degree felony murder, alleging that he killed Martinez while committing, attempting to commit, or fleeing from the inherently dangerous felonies of distribution of methamphetamine or aggravated robbery. Consistent with this charge, the jury instructions provided:

"INSTRUCTION NO. 5

"Patricio Gomez is charged with Murder in the first degree. Patricio Gomez pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. Patricio Gomez killed Michael Raymond Martinez;
"2. The killing was done by Patricio Gomez *during an attempt to commit Distribution of Methamphetamine or an attempt to commit Aggravated Robbery;*

9

"3. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"The elements of Attempted Distribution of Methamphetamine are set forth in Instruction No. 7.

"The elements of Attempted Aggravated Robbery are set forth in Instruction No. 8." (Emphasis added.)

At the first step, we find Instruction No. 5 clearly sets out alternative means of committing the felony murder charged in this case. See K.S.A. 21-5402(c) (listing the crimes that qualify as "inherently dangerous felon[ies]"); *State v. McClelland*, 301 Kan. 815, 819, 347 P.3d 211 (2015) ("'[D]ifferent underlying felonies supporting a charge of felony murder are alternative means rather than multiple acts.'"); *State v. Beach*, 275 Kan. 603, 623, 67 P.3d 121 (2003) ("The sale of methamphetamine and aggravated robbery are alternative means to commit felony murder.").

To decide whether Instruction No. 5 contained an alternative-means error, we consider whether the felony-murder instruction was legally and factually appropriate. *Reynolds*, 319 Kan. at 17. A jury instruction is legally appropriate when it fairly and accurately states the applicable law. *State v. Broxton*, 311 Kan. 357, 361, 461 P.3d 54 (2020). The State charged Gomez with first-degree felony murder under K.S.A. 21-5402(a)(2), which defines first-degree murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." And the State charged distribution of methamphetamine or aggravated robbery as the underlying inherently dangerous felonies. See K.S.A. 21-5402(c)(1)(D) (aggravated robbery is an inherently dangerous felony); K.S.A. 21-5402(c)(1)(N) and K.S.A. 21-5705(a)(1) (distribution of methamphetamine is an inherently dangerous felony). Instruction No. 5 fairly and accurately reflected the applicable law under which the State charged Gomez. Thus, the instruction was legally appropriate.

10

Turning to the crux of Gomez' argument, we next determine whether Instruction No. 5 was factually appropriate:

> "To be factually appropriate, there must be sufficient evidence, viewed in the light most favorable to the requesting party, to support the instruction. The question therefore becomes whether the instruction was supported by sufficient evidence when viewed in the light most favorable to the State. Such an inquiry is closely akin to the sufficiency of the evidence review frequently performed by appellate courts in criminal cases. Sufficiency of the evidence arguments consider whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citations omitted.]" *State v. Milo*, 315 Kan. 434, 447, 510 P.3d 1 (2022).

Gomez claims the evidence was insufficient to support a conviction under the instructions for each of the underlying inherently dangerous felonies: attempted distribution of methamphetamine and attempted aggravated robbery. In reviewing the sufficiency of the evidence, appellate courts do not reweigh evidence, resolve conflicts in the evidence, or weigh the credibility of witnesses. *State v. Buchanan*, 317 Kan. 443, 454, 531 P.3d 1198 (2023).

### i. *Attempted distribution of methamphetamine*

Jury Instruction No. 7 sets forth the elements of attempted distribution of methamphetamine, the first underlying felony:

> "The defendant is charged with an attempt to commit distribution of methamphetamine. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

> > "1. The defendant performed an overt act toward the commission of distribution of methamphetamine.

11

"2. The defendant did so with the intent to commit distribution of methamphetamine.

"3. The defendant failed to complete the commission of distribution of methamphetamine.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"The State must prove that the defendant committed the crime intentionally. A defendant acts with intent when it is the defendant's conscious objective or desire to do the act complained about by the State or to cause the result complained about by the State. An overt act necessarily must extend beyond the mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of distribution of methamphetamine are as follows:

"1. The defendant distributed methamphetamine.

"2. The quantity of methamphetamine distributed was at least 1 gram but less than 3.5 grams.

"3. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"'Distribute' means the actual, constructive, or attempted transfer of an item from one person to another; whether or not there is an agency relationship between them. 'Distribute' includes sale, offer for sale, or any act that causes an item to be transferred from one person to another."

The elements and definitions set forth in Instruction No. 7 are derived from the following statutes within the designated articles of the Kansas Criminal Code:

12

Article 53. Anticipatory Crimes

K.S.A. 21-5301(a):  A person is guilty of attempt if the person makes an overt act toward committing a crime, with the intent to commit it, but fails to complete it.

Article 57. Crimes Involving Controlled Substances

K.S.A. 21-5705(a)(1):  It is unlawful to distribute methamphetamine.

K.S.A. 21-5701(d):  As used in K.S.A. 21-5701 through K.S.A. 21-5717, "distribute" includes actual, constructive, or attempted transfer from one person to another, including sales or offers for sale.

Construing these three statutes together, Gomez argues attempted distribution of a controlled substance is an impossible criminal act under K.S.A. 21-5301(a). Gomez' argument requires us to interpret the relevant statutes. "Statutory interpretation is a question of law subject to de novo review." *State v. Eckert*, 317 Kan. 21, 27, 522 P.3d 796 (2023).

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Eckert*, 317 Kan. at 27.

We begin our statutory interpretation analysis with Article 57, which is the part of the criminal code dealing with crimes involving controlled substances. K.S.A. 21-

13

5705(a)(1) is the substantive criminal statute making it unlawful for any person to distribute methamphetamine. K.S.A. 21-5701(d) is a subsection of the definitional statute for crimes involving controlled substances and defines "distribute" as "the actual, constructive or attempted transfer from one person to another of some item." Applying the definition of "distribute" as an "attempted transfer," the Legislature clearly and unambiguously intended K.S.A. 21-5705(a)(1) to criminalize the attempt to transfer methamphetamine from one person to another.

In arguing the crime of attempted distribution is impossible, Gomez fails to acknowledge that K.S.A. 21-5705(a)(1) expressly criminalizes both distribution and attempted distribution of a controlled substance. Instead, Gomez relies on K.S.A. 21-5301(a), which defines the separate crime of attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." When the substantive crime is distribution of methamphetamine, a person is guilty of attempted distribution of methamphetamine under K.S.A. 21-5301(a) if the person intended to distribute methamphetamine, made an overt act toward distribution, but failed to complete the distribution.

Gomez' impossibility argument hinges on applying K.S.A. 21-5701(d)'s definition of "distribute" as an "attempted transfer" to the crime of attempted distribution of methamphetamine under K.S.A. 21-5301(a). Because a completed distribution and an attempted transfer are one and the same under this definition, he claims the crime of distributing methamphetamine is complete as soon as the person attempts to transfer it. According to Gomez, this makes it impossible to commit the crime of attempted distribution under K.S.A. 21-5301(a) because the State will never be able to prove the person failed to complete the distribution, which is a requirement for conviction under the attempt statute. See K.S.A. 21-5301(a) ("An attempt is any overt act toward the

14

perpetration of a crime done by a person who intends to commit such crime *but fails in the perpetration thereof* or is prevented or intercepted in executing such crime." (Emphasis added.)

Gomez' argument is unavailing, mainly because it ignores the clear directive in K.S.A. 21-5701 limiting application of the statute's definitions to only those statutes in Article 57. See K.S.A. 21-5701(d) ("A*s used in K.S.A. 21-5701 through 21-5717, and amendments thereto*" the word "distribute" means the actual, constructive, or attempted transfer from one person to another.). Although K.S.A. 21-5705(a)(1) and K.S.A. 21-5701(d) define the crime of distributing methamphetamine as complete when the person attempts to transfer it, the definition's limited application shows the Legislature did not intend for it to apply to other parts of the criminal code, including the attempt statute in Article 53.

Because the Legislature intended the definitions in K.S.A. 21-5701 to be limited to Article 57, we turn to K.S.A. 21-5111, which provides definitions for words used across the entire criminal code, unless the particular context clearly requires a different meaning. K.S.A. 21-5111(g) defines "distribute" as the actual or constructive transfer of some item from one person to another. Notably, this definition does not include an attempted transfer. Using this definition, K.S.A. 21-5301(a) clearly and unambiguously criminalizes an attempt to distribute methamphetamine when the State proves a person intended to transfer methamphetamine, made an overt act toward transfer, but failed to complete the transfer. See *Milo*, 315 Kan. at 447 (applying K.S.A. 21-5111[g] definition of "distribute" to K.S.A. 21-5301[a] in considering whether sufficient evidence supported the jury's finding that the defendant attempted to distribute marijuana).

But even if we assume ambiguity in K.S.A. 21-5701(d)'s definition of "distribute" when read alongside the attempt statute, K.S.A. 21-5301(a), Gomez' claim still fails.

15

When a statute is ambiguous, we turn to rules of statutory construction. See *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018) ("If the language of the statute is unclear or ambiguous," the court may turn "to canons of statutory construction, consult legislative history, or consider other background information to ascertain the statute's meaning."). Particularly relevant here is the rule that courts must construe statutes to avoid absurd or unreasonable results. Equally fundamental is the rule that courts must presume the Legislature does not intend to enact meaningless legislation. *Jarvis v. Dept. of Revenue*, 312 Kan. 156, 165, 473 P.3d 869 (2020). As Gomez readily concedes, applying the definition of "distribute" from the controlled substances statute to the attempt statute means that attempted distribution of a controlled substance can never be a crime under K.S.A. 21-5301(a). This result is both unreasonable and absurd because, when read this way, the statute criminalizing the attempted distribution of a controlled substance, K.S.A. 21-5705(a), is rendered meaningless.

In sum, and using the applicable definitions for each statute, the language in both K.S.A. 21-5705(a)(1) and K.S.A. 21-5301(a) clearly and unambiguously criminalize an attempt to distribute methamphetamine when the State proves a person intended to transfer methamphetamine, made an overt act toward transfer, but failed to complete the transfer. Given the crime can be proved under both statutes, however, we would be remiss in failing to note that the prison sentence for an attempted distribution of a controlled substance under K.S.A. 21-5301(a) is six months lower than the prison sentence for the same conviction under K.S.A. 21-5705(a)(1). See K.S.A. 21-5301(d)(1) ("An attempt to commit a felony which prescribes a sentence on the drug grid shall reduce the prison term prescribed in the drug grid block for an underlying or completed crime by six months.").

To explain this variance, we turn to *State v. Mora*, 315 Kan. 537, 542, 509 P.3d 1201 (2022). The case involved a drug deal that turned into a robbery, during which

Mora's codefendant shot and killed the victim. Relevant here, the State charged Mora with felony murder based on the inherently dangerous felony of attempted aggravated robbery under an aiding and abetting theory. On appeal, Mora challenged the aiding and abetting instruction because it imposed criminal liability based on foreseeability instead of specific intent to commit the crime of aggravated robbery. 315 Kan. at 541. In response, the State argued the instruction was proper because aggravated robbery is a general intent crime under K.S.A. 21-5420. Although this court agreed aggravated robbery is a general intent crime, we held the separate offense of attempting to commit a crime under K.S.A. 21-5301(a) controlled, and it required specific intent to commit the crime. Thus, even though the completed crime (aggravated robbery) is a general intent crime, the jury needed to find specific intent to commit the aggravated robbery to convict on the separate offense of attempt under K.S.A. 21-5301(a).

Although we decided K.S.A. 21-5301(a) dictated the outcome in *Mora*, we pointed out that the statute will not be controlling in every case. We observed that in some cases, the Legislature purposefully included "attempt" language in the substantive criminal statute governing the crime at issue. By expressly including it, we found the Legislature intended the statute itself to govern how attempts to commit that crime are prosecuted. Thus, when a statute expressly includes "attempt" as part of the crime, K.S.A. 21-5301(a) (the general attempt statute) does not apply. When a statute does not expressly include "attempt" as part of the crime, K.S.A. 21-5301(a) acts as a default rule to prosecute someone for attempting that crime. *Mora*, 315 Kan. at 542-43.

Relevant here, K.S.A. 21-5705(a)(1) expressly includes attempt as a way to violate the substantive criminal statute governing distribution of methamphetamine. By including attempted distribution as a way to violate the statute, the Legislature intended the crime of attempted distribution of methamphetamine to be controlled by K.S.A. 21-5705(a)(1) and not by the general attempt statute, K.S.A. 21-5301(a). In practice, this means the

17

crime of attempted distribution of methamphetamine should be charged in the following way:

1.      The defendant unlawfully distributed methamphetamine, K.S.A. 21-5705(a)(1),

2.      by attempting to transfer it to another person, K.S.A. 21-5701(d),

3.      with attempt being defined as an intent to transfer, an overt act toward transfer, and a failure to transfer, K.S.A. 21-5301(a).

See also Black's Law Dictionary 156 (12th ed. 2024) (defining an attempt as "1. The act or an instance of making an effort to accomplish something, esp. without success. 2. *Criminal law*. An overt act that is done with the intent to commit a crime but that falls short of completing the crime."); Merriam-Webster Online Dictionary (defining an attempt as "the act or an instance of trying to do or accomplish something," often unsuccessful).

Unlike the example above, the charging document in this case alleges Gomez violated K.S.A. 21-5301(a) (attempt) by committing an overt act toward distribution of methamphetamine (as defined by K.S.A. 21-5705[a][1]), intending to commit that distribution, but failing to do so. Although it deviates from what the Legislature intended, the charging document is statutorily sufficient to allege commission of the crime.

Instruction No. 7 is consistent with the charging document. In the first paragraph of Instruction No. 7, the court instructed that "each of the following claims must be proved" to find Gomez guilty of attempted distribution of methamphetamine:

"1. The defendant performed an overt act toward the commission of distribution of methamphetamine[.]

"2. The defendant did so with the intent to commit distribution of methamphetamine[.]

18

"3. The defendant failed to complete the commission of distribution of methamphetamine.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas."

In the third paragraph, the court instructed that the commission of distribution of methamphetamine is complete if the defendant distributed at least 1 gram but less than 3.5 grams of methamphetamine.

In the fourth paragraph, the court instructed that "distribute" means "the actual, constructive, or attempted transfer of an item from one person to another."

Gomez claims the evidence was insufficient to support a conviction for attempted distribution of methamphetamine under these instructions. Like his argument alleging an impossible crime under K.S.A. 21-5301(a), his claim hinges on the jury choosing the "attempted transfer" definition of "distribute" in paragraph four and dropping it into the elements in paragraph one:

"1. The defendant performed an overt act toward the commission of distribution of methamphetamine.

"2. The defendant did so with the intent to commit distribution of methamphetamine.

"3. The defendant failed to complete the [attempted transfer] of methamphetamine.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas."

Although we already have determined that the Legislature did not intend the "attempted transfer" definition of "distribute" to be used in the separate crime of attempt, Gomez' sufficiency argument fails for a more obvious reason. When the "actual transfer" definition of "distribute" in paragraph four is dropped into the elements of paragraph one, the instruction reads:

19

"1. The defendant performed an overt act toward the commission of distribution of methamphetamine.

"2. The defendant did so with the intent to commit distribution of methamphetamine.

"3. The defendant failed to complete the [actual transfer] of methamphetamine.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas."

To find Gomez guilty of attempted distribution of methamphetamine using the "actual transfer" meaning of distribution as set forth above, the State had to prove Gomez committed an overt act toward the crime of distributing methamphetamine but failed to complete the actual transfer of the methamphetamine. Here, the State presented evidence that Gomez and Roberts brought methamphetamine to the hotel room with the expectation of receiving $60 from Martinez in exchange for 1.75 grams of methamphetamine. Roberts weighed out the quantity of methamphetamine to be transferred and testified that as she did so, Martinez was looking for a container to put the drugs in. After Martinez was unable to pay for the drugs through Cash App, the conversation grew heated, and Gomez pulled out a gun and shot Martinez while they fought over the gun. Law enforcement found roughly 1 gram of methamphetamine left in the room.

Applying the "actual transfer" definition of "distribute" to these facts, Gomez failed to complete the crime of distribution because the methamphetamine was never actually transferred to Martinez. There is no evidence that the drugs were handed over, given, or sold to him. Roberts took the methamphetamine out of her purse and weighed it on the scale. Martinez' attempts to pay for the drugs were unsuccessful. Although 1 gram of methamphetamine was left behind in the hotel room, nothing in the record suggests that anyone other than Roberts handled or possessed the drugs before Martinez was shot. Roberts left the methamphetamine on the table and specifically denied that she delivered

20

the drugs to Martinez after weighing them. See *Milo*, 315 Kan. at 448 (evidence sufficient to support instruction for attempted distribution of marijuana where marijuana baggies, cash, and gift card remained on the kitchen counter as defendant fled victim's home; transfer of marijuana was never completed).

Viewed in the light most favorable to the prosecution, the evidence presented at trial establishes that a rational factfinder could have found beyond a reasonable doubt that Gomez performed an overt act toward distributing methamphetamine by bringing the drugs to the hotel but failed to complete the distribution. Because there was sufficient evidence presented to support a finding that Gomez attempted to distribute methamphetamine, the felony-murder instruction claim that Gomez killed Martinez while unlawfully attempting to distribute methamphetamine was factually appropriate.

ii. *Attempted aggravated robbery*

Jury Instruction No. 8 set forth the elements of attempted aggravated robbery:

"The defendant is charged with attempted aggravated robbery. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant performed an overt act toward the commission of aggravated robbery, to wit:  pointed a gun and demanded property from the person or presence of Michael Martinez.
"2. The defendant did so with the intent to commit aggravated robbery.
"3. The defendant failed to complete the commission of aggravated robbery.
"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"The State must prove that the defendant committed the crime intentionally. A defendant acts with intent when it is the defendant's conscious objective or desire to do

21

the act complained about by the State or to cause the result complained about by the State.

"An overt act necessarily must extend beyond the mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of aggravated robbery are as follows:

"1. The defendant knowingly took property from the person or presence of Michael Martinez.
"2. The taking was done by force.
"3. The defendant was armed with a dangerous weapon.
"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas."

Gomez argues the State presented insufficient evidence of attempted aggravated robbery as an underlying felony for the felony-murder charge. In support of this argument, he notes the jury convicted him of felony murder based on attempted aggravated robbery but acquitted him on the separate charge of attempted aggravated robbery. Gomez claims these inconsistent verdicts necessarily mean there was insufficient evidence to support the felony-murder conviction. But Gomez' argument misconstrues the law. An accused need not be convicted of the underlying felony to be convicted of felony murder. *Beach*, 275 Kan. 603, Syl. ¶ 4 ("[A]n acquittal of direct responsibility for the underlying felony does not vitiate the conviction of felony murder based on the underlying felony."); *State v. Wise*, 237 Kan. 117, 123, 697 P.2d 1295 (1985) ("[A]n acquittal of the underlying felony is not inconsistent with a conviction of felony murder.").

We acknowledge there may be times when a jury's verdict on one charge is inconsistent or even illogical based on its verdict on another charge. Yet any inquiry into the underlying reasons for the inconsistency would impermissibly require the court to look behind the verdicts to discover a motive, purpose, or meaning in the jury's actions. See *United States v. Powell*, 469 U.S. 57, 64-65, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). For example, the jury might have chosen to exercise its absolute, if unsanctioned, power of nullification, despite sufficient evidence to support the crime. Or perhaps the verdict was the result of a compromise or a mistake by the jury. Without knowing why the jury entered a particular verdict, the court cannot speculate that the verdict was reached as a result of insufficient evidence.

Thus, regardless of the jury's not guilty verdict on the attempted aggravated robbery charge, review of the issue before us remains the same—whether, based on the evidence presented, a rational factfinder could have found beyond a reasonable doubt that Gomez killed Martinez during an attempted aggravated robbery. *Beach*, 275 Kan. at 615-17, 622; see *Powell*, 469 U.S. at 67 (sufficiency of the evidence review "should be independent of the jury's determination that evidence on another count was insufficient").

Here, Hampton testified that after the Cash App transfers failed, Gomez pulled out a gun, said, "[Y]ou know why I'm here," and accused Hampton and Martinez of extorting from Roberts profile documents she possessed that contained other people's personal identifying information like social security numbers, addresses, and birthdates. According to Hampton, Gomez said he wanted the profile documents back, so Martinez started to get them out of the closet. Martinez then rushed at Gomez, and they wrestled over the gun before Martinez was shot. There is no evidence that Gomez or Roberts took the profile documents or any other property not brought with them when they left the hotel room.

23

Gomez discounts Hampton's testimony as evidence of a robbery attempt, claiming Roberts' testimony made no mention of Gomez demanding her property from Martinez. But Roberts testified she told Gomez she wanted to get her laptop and iPads back from Martinez and, after the tension escalated, Gomez told Martinez to give Roberts her "stuff" back.

Viewing the evidence outlined above in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that Gomez performed an overt act toward aggravated robbery by brandishing a gun and demanding the return of Roberts' property from Martinez, but failed to complete the crime before Martinez was killed. Because there was sufficient evidence presented to support the attempted aggravated robbery charge, the felony-murder instruction claim that Gomez killed Martinez while attempting to commit an aggravated robbery was factually appropriate.

c. *Conclusion*

Because Instruction No. 5 was both legally and factually appropriate, Gomez has failed to show any alternative means error in the district court's felony-murder instruction. See *Reynolds*, 319 Kan. at 16-17.

2. *Attempted distribution of methamphetamine as a stand-alone crime*

Incorporating his arguments from the first issue, Gomez argues the evidence was insufficient to support his conviction for attempted distribution of methamphetamine because the crime of distribution was completed. But as we found above, and viewing the evidence in a light most favorable to the State, there was sufficient evidence presented at trial from which a rational factfinder could have found beyond a reasonable doubt that

24

Gomez performed an overt act toward distributing methamphetamine by bringing the drugs to the hotel but failed to complete the distribution. Thus, Gomez' claim of insufficient evidence necessarily fails.

3. *Illegal sentence*

Finally, Gomez claims his 78-month prison sentence for attempted distribution of methamphetamine is illegal because it exceeds the statutorily allowed maximum sentence. The State agrees that the district court imposed an illegal sentence.

Although Gomez raises this argument for the first time on appeal, K.S.A. 22-3504(a) allows courts to "correct an illegal sentence at any time while the defendant is serving such sentence." A sentence "that does not conform to the applicable statutory provision" is illegal. K.S.A. 22-3504(c)(1). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which an appellate court has unlimited review. *State v. Claiborne*, 315 Kan. 399, 400, 508 P.3d 1286 (2022).

Gomez' illegal-sentence claim is a clear example of the confusion created when, as here, a criminal statute governing the crime at issue expressly includes attempt as part of the crime, but the State charges the crime under the general attempt statute. As we explained in the preceding section, the Legislature intended for a substantive criminal statute to govern the crime at issue in those cases where it expressly included attempt as part of the crime in the statute. And for purposes of sentencing, it appears that is what the court did here. Gomez had a criminal history score of A. Distribution of methamphetamine is a severity level 3 drug felony. See K.S.A. 21-5705(a)(1); K.S.A. 21-5705(d)(3)(B). The applicable drug grid block lists a sentencing range of 83-78-74 months for a distribution conviction. See K.S.A. 21-6805(a). The court sentenced Gomez to 78 months, the midrange sentence in drug grid block.

25

But as we also explained above, the State charged Gomez with, and the jury convicted him of, attempted distribution of methamphetamine under the general attempt statute, K.S.A. 21-5301(a). Under K.S.A. 21-5301(d)(1), "[a]n attempt to commit a felony which prescribes a sentence on the drug grid shall reduce the prison term prescribed in the drug grid block for an underlying or completed crime by six months." Given he was convicted under the attempt statute, the presumptive sentencing range for Gomez' conviction was 77-72-68 months. See K.S.A. 21-5301(d)(1). Because Gomez' 78-month sentence for attempted distribution of methamphetamine exceeds the statutorily allowed maximum sentence, it is illegal and therefore must be vacated.

Gomez' convictions are affirmed. His sentence for attempted distribution of methamphetamine is vacated, and the case is remanded for resentencing.

* * *

ROSEN, J., concurring:  I concur in the majority's conclusion affirming Gomez' convictions and its analysis and ruling on Gomez' sentencing claim. I write separately because I believe Gomez has correctly identified a legally inappropriate jury instruction.

The State charged Gomez with felony murder, alleging that Michael Martinez was killed while Gomez was committing attempted distribution of methamphetamine or attempted aggravated robbery. After a jury found him guilty, Gomez argued on appeal that the State had failed to provide sufficient evidence of both attempted distribution and attempted aggravated robbery, so the felony-murder conviction could not stand. Gomez' argument tracked our longstanding rule that a conviction of a crime that can be committed in more than one way will stand only if the jury indicated it unanimously relied upon a means of committing the crime for which there was sufficient evidence or, in the absence of that indication, there was sufficient evidence of every means. See *State*

26

*v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010). But a majority of this court recently discarded this rule in *State v. Reynolds*, 319 Kan. 1, 17, 552 P.3d 1 (2024). Now, when a defendant alleges an alternative means error as Gomez did, this court analyzes the issue applying our less demanding instructional error framework. 319 Kan. at 17. That analysis questions whether the instructions to the jury were legally and factually appropriate, and, if they were not, whether the instructions created prejudicial error. 319 Kan. at 17.

I disagreed with the majority's decision to overturn our previous approach to alleged alternative means error. I still do. Under what I believe is the correct approach, this court would consider whether sufficient evidence supported both of the felonies underlying Gomez' felony-murder conviction, conclude that it does, and affirm the conviction. But this is no longer the way of this court, so I will not belabor this point. Instead, I will address the flaw I see in the majority's analysis as this court embarks upon its new approach.

The new approach begins by asking whether the jury instructions for felony murder were legally appropriate. *Reynolds*, 319 Kan. at 17. The relevant portions of the instructions are as follows:

"INSTRUCTION NO. 5

"Patricio Gomez is charged with Murder in the first degree. Patricio Gomez pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. Patricio Gomez killed Michael Raymond Martinez;
"2. The killing was done by Patricio Gomez during an attempt to commit Distribution of Methamphetamine or an attempt to commit Aggravated Robbery;
. . . .

27

"The elements of Attempted Distribution of Methamphetamine are set forth in Instruction No. 7.

"The elements of Attempted Aggravated Robbery are set forth in Instruction No. 8."

## "INSTRUCTION NO. 7

"The defendant is charged with an attempt to commit distribution of methamphetamine. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant performed an overt act toward the commission of distribution of methamphetamine[.]

"2. The defendant did so with the intent to commit distribution of methamphetamine[.]

"3. The defendant failed to complete the commission of distribution of methamphetamine.

. . . .

"The State must prove that the defendant committed the crime intentionally. A defendant acts with intent when it is the defendant's conscious objective or desire to do the act complained about by the State or to cause the result complained about by the State. An overt act necessarily must extend beyond the mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of distribution of methamphetamine are as follows:

"1. The defendant distributed methamphetamine.

28

"2. The quantity of methamphetamine distributed was at least 1 gram but less than 3.5 grams.

"3. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"'Distribute' means the actual, constructive, or attempted transfer of an item from one person to another; whether or not there is an agency relationship between them. 'Distribute' includes sale, offer for sale, or any act that causes an item to be transferred from one person to another."

## "INSTRUCTION NO. 8

"The defendant is charged with attempted aggravated robbery. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant performed an overt act toward the commission of aggravated robbery, to wit:  pointed a gun and demanded property from the person or presence of Michael Martinez.

"2. The defendant did so with the intent to commit aggravated robbery.

"3. The defendant failed to complete the commission of aggravated robbery.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas.

"The State must prove that the defendant committed the crime intentionally. A defendant acts with intent when it is the defendant's conscious objective or desire to do the act complained about by the State or to cause the result complained about by the State.

"An overt act necessarily must extend beyond the mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of aggravated robbery are as follows:

29

"1. The defendant knowingly took property from the person or presence of Michael Martinez.

"2. The taking was done by force.

"3. The defendant was armed with a dangerous weapon.

"4. This act occurred on or about the 30th day of September 2021, in Sedgwick County, Kansas."

The majority concludes that Instruction No. 5 was legally appropriate. I agree. This instruction accurately sets out the applicable law generally defining felony murder. See *State v. Wimbley*, 313 Kan. 1029, 1034, 493 P.3d 951 (2021) (instructions are legally appropriate when they "fairly and accurately state the applicable law").

The analysis should naturally move forward to consider the legal appropriateness of the rest of the felony-murder instructions—those defining the crimes underlying the felony-murder charge. This is especially true in this case because Gomez has argued the State could not prove the elements in the attempted distribution instruction. See *Reynolds*, 319 Kan. at 17 (when defendant argued insufficient evidence supported one means of a crime, this court focused on whether instruction for that means was legally and factually appropriate in new alternative means analysis). But the majority does not do this. It instead moves on to consider whether the remaining instructions were factually appropriate. I believe the majority skips a very important step, one that reveals a legally inappropriate jury instruction. I analyze this step here.

I begin with Instruction No. 8, because it suffers no flaws. It accurately sets out the elements of an attempted crime under K.S.A. 21-5301, which are an "overt act toward the perpetration" of a crime, an intent to commit that crime, and the failure to execute that crime. And it accurately sets out the elements of aggravated robbery. See K.S.A. 21-5420 ("knowingly taking property from the person or presence of another by force or by threat

30

of bodily harm to any person" while "armed with a dangerous weapon"). These instructions are an accurate reflection of the law.

But Instruction No. 7 is not an accurate reflection of the law. Again, it correctly sets out the elements of an attempted crime under K.S.A. 21-5301, and it correctly sets out the elements of distribution of methamphetamine in K.S.A. 21-5705(a)(1) ("distribute or possess with the intent to distribute . . . [o]piates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107[d][3]"). It also correctly sets out the definition of "distribute" as it is used in the definitions of crimes involving controlled substances: "the actual, constructive or *attempted* transfer from one person to another." (Emphasis added.) K.S.A. 21-5701. But the correct recitation of the language in these statutes does not amount to a legally appropriate instruction because they provided an "inaccurate picture" of the "applicable law." *State v. Z.M.*, 319 Kan. 297, 327, 333, 555 P.3d 190 (2024); *Wimbley*, 313 Kan. at 1034.

When a substantive criminal statute indicates an attempt would in fact *complete* the crime, as does the distribution statute in this case, the general attempt statute—K.S.A. 21-5301—is inapplicable. This court said as much in *Mora* and the majority confirms it today, explaining:

> "[In *Mora*,] [we] observed that in some cases, the Legislature purposefully included 'attempt' language in the substantive criminal statute governing the crime at issue. By *expressly including it, we found the Legislature intended the statute itself to govern how attempts to commit that crime are prosecuted. Thus, when a statute expressly includes 'attempt' as part of the crime, K.S.A. 21-5301(a) (the general attempt statute) does not apply. When a statute does not expressly include 'attempt' as part of the crime, K.S.A. 21-5301(a) acts as a default rule to prosecute someone for attempting that crime. Mora, 315 Kan. at 542-43.*" (Emphasis added.) Slip op. at 17.

31

The practical problems with applying the general attempt statute to a crime that can be completed by an attempt are evident in this case. By incorporating K.S.A. 21-5301, instruction seven informed the jury the State could prove Gomez was guilty by proving he attempted but failed to attempt to transfer methamphetamine. This is, as Gomez argues, legally impossible.

The majority acknowledges this problem and agrees K.S.A. 21-5301 is inapplicable to Gomez' case. It observes, "By including attempted distribution as a way to violate the statute, the Legislature intended the crime of attempted distribution of methamphetamine to be controlled by K.S.A. 21-5705(a)(1) and not by the general attempt statute, K.S.A. 21-5301(a)." Slip op. at 18. Given this conclusion, I cannot see how Instruction No. 7 can be legally appropriate. I would hold it is not and move on.

Because at least one of the instructions is legally inappropriate, this court's new approach to alternative means problems requires we simply consider whether this inappropriate instruction caused prejudicial error. See *Reynolds*, 319 Kan. at 17. Because Gomez did not object to the legally inappropriate instruction at trial, this means this court must "be firmly convinced the jury would have reached a different verdict had" the instruction been correct. *Reynolds*, 319 Kan. at 18.

I am not firmly convinced the jury would have reached a different conclusion had it been appropriately instructed. Instruction No. 7 presented a legally impossible means of committing the charged crime, but it also presented legally *possible* means of committing the crime. The jury had the option to find Gomez guilty if Martinez died while Gomez attempted but failed to *actually* transfer methamphetamine. As the majority concludes, there was ample evidence of this crime. Consequently, I cannot be firmly convinced that a legally correct Instruction No. 7 would have caused the jury to reach a different conclusion. I would affirm the felony-murder conviction based on this analysis.

32

For the same reasons, I would also affirm Gomez' independent conviction of attempted distribution of methamphetamine over Gomez' argument that it cannot stand because there was insufficient evidence to support it.

LUCKERT, C.J., and WALL, J., join the foregoing concurrence.