IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,467

STATE OF KANSAS,
*Appellee*,

v.

BERT EVERETT EVANS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The guiding principle of statutory interpretation is to give effect to the Legislature's intent whenever that intent can be determined. To discern that intent, courts first look at the statute's plain language, interpreting words according to their ordinary meaning. If the language is clear and unambiguous, courts should not look beyond the text or add meaning that does not appear in the statute. But if the statute's wording is ambiguous, courts will consult canons of construction to resolve the ambiguity.

2.

When a defendant objects to the classification of an out-of-state conviction for purposes of determining criminal history at sentencing, the State bears the burden to establish criminal history by a preponderance of the evidence under K.S.A. 21-6814(c).

3.

Under Nev. Rev. Stat. § 200.380 (1995), a defendant can commit robbery by causing fear of harm to property rather than fear of physical harm. This statute does not require proof that the offender threatened or caused fear of bodily or physical harm or violence as described in K.S.A. 21-6811(e)(3)(B)(i)(b). In the absence of such proof, a

1

Nevada robbery conviction under this statute must be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii).

4.

Under Nev. Rev. Stat. § 200.380 (1995), robbery requires the presence of another person but does not limit that person's status, permitting the victim to be an accomplice or a participant in a drug transaction. This statute does not require proof of the presence of a person other than the defendant, a charged accomplice, or a person engaged with the defendant in a drug transaction as described in K.S.A. 21-6811(e)(3)(B)(i)(d). In the absence of such proof, a Nevada robbery conviction under this statute must be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii).

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 31, 2025. Appeal from Allen District Court; TOD MICHAEL DAVIS, judge. Submitted without oral argument September 11, 2025. Opinion filed March 6, 2026. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, the sentence is vacated, and the case is remanded to the district court with directions.

*Sam Schirer,* of Kansas Appellate Defender Office, was on the briefs for appellant.

*Brandon D. Cameron*, county attorney, and *Kris W. Kobach*, attorney general, were on the briefs for appellee.

PER CURIAM:  In August 2023, Bert Everett Evans pled no contest to one count of nonresidential burglary. The district court ordered a presentence investigation (PSI) report, which found Evans had a criminal history score of C. In its calculations, the PSI report classified a 2001 Nevada robbery conviction under Nev. Rev. Stat. § 200.380 (1995) as an adult person felony.

Before sentencing, Evans filed an objection to his criminal history score, arguing the Nevada crime should be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B) for purposes of calculating his criminal history score. The district court denied the motion, finding that the Nevada offense's requirement of taking property by force, violence, or fear of injury met Kansas' definition of conduct involving fear of bodily or physical harm under K.S.A. 21-6811(e)(3)(B)(i)(b). On March 4, 2024, the court sentenced Evans to 27 months in prison, suspended the sentence, and imposed 24 months of probation.

A panel of the Court of Appeals affirmed the district court's finding that the Nevada robbery conviction was a person felony. After noting the 2019 statutory change to how an out-of-state crime is classified for criminal history purposes, the panel found that Evans' Nevada robbery conviction was a person felony because there were elements present in the out-of-state offense that "correspond[ed]" with two circumstances outlined in K.S.A. 21-6811(e)(3)(B)(i). *State v. Evans*, No. 127,467, 2025 WL 396983, at *1-2 (Kan. App. 2025) (unpublished opinion).

Evans filed a petition for review criticizing the panel's conclusion that an out-of-state conviction must be classified as a person felony if one of the circumstances listed in K.S.A. 21-6811(e)(3)(B)(i) *is present* in the elements of the out-of-state offense. Evans argues the panel's conclusion "is impossible to square with K.S.A. 21-6811(e)(3)(B)(iii)'s plain language" stating that an out-of-state felony conviction is classified as a nonperson offense if its elements *do not require proof* of any listed circumstances. We granted Evans' petition for review and ordered supplemental briefing asking the parties to discuss statutory ambiguity, this court's recent precedents, whether stare decisis controls the outcome in this case, and the proper burden of proof.

Having fully considered all briefing submitted by the parties, we conclude that Evans' Nevada robbery conviction must be classified as a nonperson felony. We therefore

3

reverse the Court of Appeals and the district court, vacate Evans' sentence, and remand for resentencing.

*Preservation and standard of review*

Evans argued his Nevada robbery conviction should be classified as a nonperson felony before the district court and the panel. *Evans*, 2025 WL 396983, at *1-2. This argument is thus preserved for review.

Evans' argument requires us to interpret the statute governing determination of an offender's criminal history classification for sentencing purposes. See K.S.A. 21-6811. Statutory interpretation presents a question of law over which appellate courts exercise unlimited review. The guiding principle of statutory interpretation is to give effect to the Legislature's intent whenever that intent can be determined. To discern that intent, our analysis begins with the statute's plain language, interpreting words according to their ordinary meaning. If the language is clear and unambiguous, courts should not look beyond the text or add meaning that does not appear in the statute. But if the statute's wording is ambiguous, we will consult canons of construction to resolve the ambiguity. *State v. Gomez*, 320 Kan. 3, 13, 561 P.3d 908 (2025).

*Kansas statutory out-of-state crime classifications*

In 2019, the Legislature enacted a new elements-based test for classifying out-of-state felonies as person or nonperson offenses for criminal history purposes:

"(B) In designating a felony crime as person or nonperson, the felony crime shall be classified as follows:

4

(i) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense:

(a) Death or killing of any human being;

(b) threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person;

(c) bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree;

(d) the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance;

(e) possessing, viewing, depicting, distributing, recording or transmitting an image of any person;

(f) lewd fondling or touching, sexual intercourse or sodomy with or by any person or an unlawful sexual act involving a child under the age of consent;

(g) being armed with, using, displaying or brandishing a firearm or other weapon, excluding crimes of mere unlawful possession; or

(h) entering or remaining within any residence, dwelling or habitation.

(ii) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a person felony if the elements of the out-of-state

felony offense that resulted in the conviction or adjudication necessarily prove that a person was present during the commission of the offense. For purposes of this clause, the person present must be someone other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance. The presence of a person includes physical presence and presence by electronic or telephonic communication.

(iii) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a nonperson felony if the elements of the offense do not require proof of any of the circumstances in subparagraph (B)(i) or (ii)." K.S.A. 21-6811(e)(3)(B).

In short, this statutory framework requires an out-of-state felony conviction to be classified as a person felony if one of the enumerated "person-related" circumstances listed in K.S.A. 21-6811(e)(3)(B)(i) and (ii) is *present* in the elements of the out-of-state offense. But if its elements do not *require proof* of any listed circumstance, the out-of-state felony conviction must be classified as a nonperson offense. K.S.A. 21-6811(e)(3)(B)(iii).

*Prior precedent:* Busch *and* Daniels

We previously applied this elements-based approach in *State v. Busch*, 317 Kan. 308, 528 P.3d 560 (2023), and *State v. Daniels*, 319 Kan. 340, 554 P.3d 629 (2024).

In *Busch*, this court examined five out-of-state convictions—four for New Jersey burglary and one for New Jersey criminal trespass—to determine whether they qualified as person or nonperson felonies under the 2019 amendments to K.S.A. 21-6811(e)(3)(B). Regarding the burglary convictions, we noted that the New Jersey statute required proof that a defendant entered a "'structure,'" defined broadly to include "'any building, room,

6

ship, vessel, car, vehicle or airplane.'" 317 Kan. at 312 (quoting N.J. Stat. Ann. § 2C:18-1 [West 1981]). Based on this definition, a person could violate the New Jersey statute by entering a car or airplane—conduct outside the "residence, dwelling or habitation" circumstance listed in K.S.A. 21-6811(e)(3)(B)(i)(h). Because the New Jersey burglary statute did not *require proof* of a dwelling-related circumstance, we held that the plain language of K.S.A. 21-6811(e)(3)(B)(iii) required the New Jersey burglary convictions to be classified as nonperson felonies. 317 Kan. at 313.

We reached a different conclusion regarding Busch's criminal trespass conviction. Although the New Jersey statute defined a single trespass offense, it graded the offense at different levels depending on where the trespass occurred. Under the statute, a person commits criminal trespass by "'knowing[ly] . . . enter[ing] or surreptitiously remain[ing] in any structure'" without authorization. 317 Kan. at 314 (quoting N.J. Stat. Ann. § 2C:18-3[a] [West 1981]). The offense is elevated to a fourth-degree crime if the trespass occurs in a dwelling; otherwise, it is a lesser disorderly person offense. 317 Kan. at 314 (quoting N.J. Stat. Ann. § 2C:18-3[a] [West 1981]). Because a fourth-degree trespass necessarily involves entry into a dwelling, we found it satisfied the "residence, dwelling or habitation" circumstance in K.S.A. 21-6811(e)(3)(B)(i)(h). In so finding, we noted the State met its burden by designating the offense on the PSI report as "residential criminal trespass," and Busch did not object or present evidence to the contrary. 317 Kan. at 314. Because the PSI was sufficient to establish that the New Jersey trespass conviction fell under the dwelling-based degree of the offense, we upheld its classification as a person felony. 317 Kan. at 314.

A year later, in *Daniels*, we reaffirmed the interpretive principles established in *Busch* but applied them in the context of a divisible out-of-state statute. There, the PSI report indicated Daniels had a criminal history score of "C" based in part on classification of a 2003 Georgia burglary conviction as a person felony. At the time of his conviction, the Georgia burglary statute provided, in relevant part:

7

"(a) A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof." Ga. Code Ann. § 16-7-1(a) (1980).

Based on this plain text, we found the statute listed three distinct locational elements, stated in the disjunctive, each describing a specific category of places that can be burglarized:

- the dwelling house of another;
- any building, vehicle, railroad car, watercraft, or other structure designed for use as a dwelling; or
- any other building, railroad car, aircraft, or room or part thereof.

Since each alternative contained a separate, finite set of locational elements, we concluded the statute defined multiple forms of burglary, creating a divisible statute with several distinct crimes rather than one offense with a single locational element. *Daniels*, 319 Kan. at 343-44. Because only some alternatives would satisfy the Kansas "residence, dwelling or habitation" person-crime circumstance, we recognized that Daniels' "Georgia conviction *might* be a nonperson felony, but it *might not* be." 319 Kan. at 345.

The decisive issue, then, was who bore the burden of proving which statutory alternative formed the basis of the conviction. We answered this question by considering precedent interpreting K.S.A. 21-6814, which sets forth the procedure for determining a defendant's criminal history score. First, we acknowledged that it is fundamentally the State's burden to prove a defendant's criminal history at sentencing. *Daniels*, 319 Kan. at 346 (citing *State v. Roberts*, 314 Kan. 316, 322, 498 P.3d 725 [2021]). Next, we reiterated

that K.S.A. 21-6814(a) contemplates two possible scenarios: (1) defendant admits to criminal history or (2) the court determines criminal history by a preponderance of the evidence. 319 Kan. at 346 (citing *State v. Corby*, 314 Kan. 794, 797, 502 P.3d 111 [2022]).

Extending the holding from *Corby*, we similarly concluded that when a defendant admits the accuracy of the PSI report, that admission satisfies the State's burden to establish both the existence and the person/nonperson classification of prior convictions under K.S.A. 21-6814(a). *Daniels*, 319 Kan. at 346-47 (citing *Corby*, 314 Kan. at 798 [in context of felony classification]). Finally, we held that once criminal history is established at sentencing, any later challenge triggers K.S.A. 21-6814(c), which shifts the burden to the defendant to prove error by a preponderance of the evidence. 319 Kan. at 348. Because Daniels admitted his PSI was correct and provided no record evidence— such as his Georgia journal entry—to show the conviction arose under the nondwelling alternative, he failed to meet that burden. 319 Kan. at 349.

We also explained why we did not conduct this burden-shifting analysis previously in *Busch*. Notably, the parties in *Busch* did not raise a burden-of-proof issue, but even if the issue had been raised, the outcome would have been the same in that case. Unlike the Georgia statute in *Daniels*, the New Jersey burglary statute in *Busch* was nondivisible and broader as a matter of law than the relevant enumerated circumstance under K.S.A. 21-6811(e)(3)(B)(i)(h). Therefore, Busch's out-of-state burglary convictions were necessarily nonperson felonies under K.S.A. 21-6811(e)(3)(B)(iii). And his criminal trespass conviction, designated on the PSI as "residential" and unchallenged at sentencing, would still have been scored as a person felony. Thus, the holding in *Daniels* did not change the substantive rule announced in *Busch*—that classification depends on the statutory elements—but clarified how this rule applies when the statute is divisible and how the burden of proof shifts when the defendant seeks to revisit a previously admitted criminal history. *Daniels*, 319 Kan. at 349-50.

9

Here, Evans objected to the scoring of his Nevada robbery conviction at sentencing, so the State had the burden to establish that this out-of-state conviction qualifies as a person felony under Kansas law. See K.S.A. 21-6814(c); *Daniels*, 319 Kan. at 346 ("As part of this burden, the State must prove all facts necessary for the district court to make an accurate classification for all scoreable crimes.").

*Nevada crime of conviction*

At the time of Evans' conviction, the Nevada robbery statute provided in part:

"1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person *or property*, or the person or *property* of a member of his or her family, or of anyone in his or her company at the time of the robbery." (Emphasis added.) Nev. Rev. Stat. § 200.380 (1995).

The Court of Appeals concluded that the Nevada robbery satisfied the circumstances set forth in K.S.A. 21-6811(e)(3)(B)(i)(b), which includes "threatening or causing fear of bodily or physical harm or violence," and K.S.A. 21-6811(e)(3)(B)(i)(d), which turns on the "presence of a person" other than the defendant, a charged accomplice, or a person involved in a drug transaction. *Evans*, 2025 WL 396983, at *2. The panel reasoned that robbery, by definition, is committed against another person and, in this case, involved force, violence, or fear. 2025 WL 396983, at *2.

But that analysis does not account for the full scope of Nevada's statute. Under Nev. Rev. Stat. § 200.380 (1995), a defendant can commit robbery by causing fear of harm to property rather than fear of physical harm. And although the Nevada robbery statute requires the presence of another person, it does not limit that person's status,

10

permitting the victim to be an accomplice or a participant in a drug transaction. Because the Nevada statute

- *does not require proof* that the offender threatened or caused fear of bodily or physical harm or violence as described in K.S.A. 21-6811(e)(3)(B)(i)(b), and

- *does not require proof* of the presence of a person other than the defendant, a charged accomplice, or a person engaged with the defendant in a drug transaction as described in K.S.A. 21-6811(e)(3)(B)(i)(d).

Evans' Nevada robbery conviction must be scored as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii).

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, Evans' sentence is vacated, and the case is remanded to the district court for resentencing consistent with this opinion.

LUCKERT, J., not participating.

* * *

BILES, J., concurring:  I agree Bert Evans' Nevada robbery conviction qualifies as a nonperson felony under K.S.A. 21-6811(e)(3)(B), but I take a different analytical path to reach that conclusion. In my view, the majority opinion misses the mark in its statutory interpretation, erroneously focuses on the Nevada robbery statute's injury-to-property element, and improperly employs the federal divisibility framework. My reasoning sticks with state statutory interpretation. Finally, I argue we need to revisit *State v. Busch*, 317 Kan. 308, 528 P.3d 560 (2023), and *State v. Daniels*, 319 Kan. 340, 554 P.3d 629 (2024), and face the reality both were wrongly decided.

11

PART ONE: THE MEANING OF "SHALL" IN K.S.A. 21-6811(e)(3)(B)

The majority fails to engage in proper statutory analysis. It quotes at length K.S.A. 21-6811(e)(3)(B)'s statutory language, discusses *Busch* and *Daniels*, and concludes Evans' out-of-state conviction must be classified as a nonperson felony. But nowhere does it analyze the statute to address the issue this court identified in our follow up order after oral arguments: "Whether the plain language of K.S.A. 21-6811(e)(3)(B)(i) and (iii), when read together, create an ambiguity in classification of out-of-state prior convictions that requires resort to legislative history and canons of construction, or whether the plain language of subsection (iii) unambiguously reflects a legislative intent to limit subsection (i)."

K.S.A. 21-6811(e)(3)(B) governs classifying an out-of-state felony conviction as person or nonperson. K.S.A. 21-6811(e)(3)(B)(i) provides the conviction "*shall be classified as a person felony* if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense." (Emphasis added.) And K.S.A. 21-6811(e)(3)(B)(iii) states the conviction "*shall be classified as a nonperson felony* if the elements of the offense do not require proof of any of the circumstances in subparagraph (B)(i) or (ii)." (Emphasis added.)

Independently, the text of these two subparagraphs seems clear enough. See *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021) ("When interpreting a statute, a court begins with legislative intent. The best and safest rule for discerning that intent is the statute's plain language. A court does not move on to consider tools of statutory construction unless the statutory language is unclear or ambiguous."). The problem comes when we read them together. How should a conviction be classified when the out-of-state offense includes one of the listed circumstances *and* does not require proof of that circumstance?

12

Subparagraph (B)(i) directs the conviction "shall be classified as a person felony," while subparagraph (B)(iii) provides the conviction "shall be classified as" nonperson. K.S.A. 21-6811(e)(3). Giving "shall" its plain meaning in both subparagraphs results in two mandatory provisions that lead to diametrically opposed classifications. See *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 204, 506 P.3d 267 (2022) (generally, identical words used in different parts of the same statute are presumed to carry the same meaning to promote consistency in interpretation); Merriam-Webster Online Dictionary (defining "shall" as "what is inevitable" or "in laws, regulations, or directive to express what is mandatory").

This is trademark textual ambiguity. As *State v. Raschke*, 289 Kan. 911, 914-15, 219 P.3d 481 (2009), recognized, the meaning of "shall" is not always plain and may require construction. My bottom line is that K.S.A. 21-6811(e)(1) requires out-of-state convictions to be used in classifying an offender's criminal history, and K.S.A. 21-6811(e)(3) directs that those convictions be designated as either person or nonperson crimes. Subparagraphs (e)(3)(B)(i) and (iii) therefore operate as opposite sides of the same classification decision. And the Legislature used "shall" language in both provisions, even though their operative conditions could overlap, making it impossible for both directives to simultaneously operate as mandatory in some circumstances. Common sense tells me one must yield.

If subparagraph (B)(i) is treated as mandatory, while (B)(iii) is seen as merely suggestive, it renders (B)(iii) superfluous because any out-of-state statute that includes a listed circumstance—even if that circumstance's proof is not required—will always be classified under (B)(i). And that means subparagraph (B)(iii) would never independently govern a classification outcome in that scenario, which is contrary to our rule that courts must, if possible, give effect to every provision and avoid constructions that render statutory language meaningless. See *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251

13

(2015) ("We also 'construe statutes in such a way as to avoid unreasonable results, and we presume that the legislature does not intend to enact meaningless or redundant legislation.'").

To avoid any meaningless or unreasonable outcome, the only viable construction is to treat (B)(iii) as mandatory. So here, we must use our methods of statutory construction to determine what the Legislature intended with its use of "shall." In her concurrence, Justice Standridge employs one of these methods, the doctrine of *in pari materia*, but does so to decide the statute is clear. She explains:

> "Statutory interpretation begins with text. When employing a plain language interpretation, courts consider not only the language itself, but also the specific context in which that language is used and the broader context of the statute as a whole. In this regard, 'the doctrine of *in pari materia* has utility beyond those instances where statutory ambiguity exists.' *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). As we have explained, '[i]t can be used as a tool to assess whether the statutory language is plain and unambiguous in the first instance, and it can provide substance and meaning to a court's plain language interpretation of a statute.' 316 Kan. at 224." 321 Kan. at __, slip op. at 32-33 (Standridge, J., concurring).

*In pari materia* can "provide substance and meaning" to a plain language interpretation, but only "to lend support" to the validity of a plain language analysis that is already clear. *Bruce*, 316 Kan. at 224-25. In *Bruce*, the court first gave the statutory terms their ordinary meaning and then used the doctrine to confirm the provisions operated together in harmony. 316 Kan. at 229-30. That is fundamentally different from the situation here, in which we must reconcile two conflicting uses of "shall" within the same statute. Unlike the provisions in *Bruce*, which could be read together without tension, the plain meaning of subparagraphs (B)(i) and (B)(iii) point in opposite directions when an out-of-state statute includes, but does not require, a circumstance listed in (B)(i).

14

Simply put, Justice Standridge's application of *in pari materia* appears to me to bypass a structural clash in the text. I believe using the doctrine in this way stretches *Bruce* beyond its limits. When two mandatory provisions within the same statute dictate different outcomes for the same out-of-state conviction, *in pari materia* does not confirm the statute's clarity; rather, it resolves the obvious ambiguity. Still, I agree with the majority and Justice Standridge's conclusion that subparagraph (B)(iii) controls Evans' case. But my analytical path to get to that outcome is different. I believe the statute is ambiguous, but under the doctrine of *in pari materia* and the canon against surplusage, subparagraph (B)(iii) takes precedence over the conflicting mandate in subparagraph (B)(i). And this construction is consistent with the rule of lenity. See *State v. Horn*, 288 Kan. 690, Syl. ¶ 3, 206 P.3d 526 (2009) ("Where the legislature permits the existence of conflicting statutory provisions prescribing different sentences to be imposed for a single criminal offense, the rule of lenity requires that any reasonable doubt as to which sentence applies must be resolved in favor of the offender.").

PART TWO:  APPLYING KANSAS LAW TO THE NEVADA ROBBERY STATUTE

Next, we need to focus on whether Evans' Nevada conviction could trigger subparagraph (B)(i)'s person classification by examining if one of the listed circumstances is present in the *statutory elements* of the Nevada offense, not just in a particular case's facts. See K.S.A. 21-6811(e)(3)(B)(i) ("An out-of-state conviction . . . for the commission of a felony offense . . . shall be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction *in the elements of the out-of-state offense*." [Emphasis added.]). Here, the specific circumstances at issue are K.S.A. 21-6811(e)(3)(B)(i)(b) ("threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person") and (i)(d) ("the presence of a person").

15

The majority holds the Nevada robbery statute requires neither. 321 Kan. at __, slip op. at 10-11. It concludes subparagraph (i)(d) does not apply because the Nevada statute permits a conviction based on the presence of any person, without excluding an accomplice or a participant in a drug transaction. I agree, although I feel the need to provide more than the majority's single sentence to explain why. As for its reasoning that subparagraph (i)(b) does not apply because Nevada allows a conviction based on fear of injury to property, I must depart. That said, I agree with the outcome that neither subparagraph applies to Evans' case.

To begin, the poor drafting of subparagraph (i)(d) prevents classifying Evans' conviction as a person felony. K.S.A. 21-6811(e)(3)(B)(i)(d) classifies offenses committed in "the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance" as a person felony. But Nevada's definition of robbery does not limit who must be present in this way. See Nev. Rev. Stat. § 200.380 (1995) ("Robbery is the unlawful taking of personal property from the person of another, or in the person's presence . . . by means of force or violence or fear of injury . . . to his or her person or property . . . ."). Even Kansas' own robbery statute contains no such exclusions. See K.S.A. 21-5420(a) ("Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person."). Nor did I find such a limitation in my survey of all other states' robbery statutes.

In a total disconnect from the purpose of classifying felonies as person or nonperson, subparagraph (i)(d)'s exclusion of certain individuals effectively forecloses classifying many robberies committed in the presence of others as a person felony. As a result, unless an out-of-state statute replicates Kansas' precise exclusionary language, subparagraph (i)(d) will never be met. But we must apply it as written, not as we might wish the Legislature had drafted it. See *State v. Ayers*, 309 Kan. 162, 164, 432 P.3d 663 (2019) (when a statute is clear, courts must enforce its express language rather than

16

rewrite it); *State v. Ninh*, 320 Kan. 477, 490, 570 P.3d 1169 (2025) (courts "do not add or ignore statutory [text]").

More crucially, if the listed circumstances are not in the elements of a foreign criminal statute, applying them to increase the penalty beyond the statutory maximum violates *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (requiring any fact increasing a criminal penalty be submitted to a jury and proved beyond a reasonable doubt). The practical futility of subparagraph (i)(d) stems not from the phrase "in the elements of the out-of-state offense" itself, but from the requirement that certain individuals be excluded under foreign statutes. Accordingly, I agree with the majority that subparagraph (i)(d) is inapplicable to Evans' case.

As for subparagraph (i)(b)'s inapplicability, my disagreement with the majority's rationale comes from its reliance on one of the Nevada statute's four possible means of commission—fear of injury to property. The majority holds that under the Nevada law "a defendant can commit robbery *by causing fear of harm to property* rather than fear of physical harm," and therefore "[t]his statute does not require proof that the offender threatened or caused fear of bodily or physical harm or violence as described in K.S.A. 21-6811(e)(3)(B)(i)(b). In the absence of such proof, a Nevada robbery conviction under this statute must be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii)." (Emphasis added.) 321 Kan. __, Syl. ¶ 3. In short, it views the Nevada statute as broader than subparagraph (i)(b) because it includes fear of injury to property as a means. This has at least two problems.

First, the statute uses the phrase "by means of . . . fear of injury." Nev. Rev. Stat. § 200.380 (1995). It does not state "causing" as the majority writes. The difference in the majority's paraphrasing may be subtle but potentially significant. One might conclude "causing fear" focuses on the defendant's action that induces an emotional response in a victim, while "by means of . . . fear" might emphasize the defendant exploiting the

17

victim's fear. If so, the latter language would not specify who is responsible for causing that fear. I see no reason to resolve this difference in this decision. But the majority's paraphrasing injects imprecision into an analytical process that demands precision because it concerns someone's term of imprisonment.

Second, and more substantively in Evans' case, the majority's holding is plainly inconsistent with subparagraph (i)(b) including "causing fear of . . . physical harm" as a circumstance in addition to "bodily harm." See K.S.A. 21-6811(e)(3)(B)(i)(b) ("threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person"). "Physical harm" means "[a]ny physical injury or impairment of land, chattels, or the human body." Black's Law Dictionary 857 (12th ed. 2024). And since this subparagraph already covers "bodily harm," "physical harm" should be interpreted more broadly to include property—both real (land) and personal (chattels). See *Delaney v. Deere & Co.*, 268 Kan. 769, 775, 999 P.2d 930 (2000) ("It is presumed the legislature understood the meaning of the words it used and intended to use them, that the legislature used the words in their ordinary and common meaning, and the legislature intended a different meaning when it used different language . . . ."). This is why I disagree with the opinion's reliance on "injury to property."

Nevertheless, I reach the same conclusion that Evans' prior conviction should be classified as a nonperson felony, but on a different basis: Nevada's first two means (force and violence) are broader than any of the five circumstances listed in K.S.A. 21-6811(e)(3)(B)(i)(b). Those circumstances are: (1) threatening bodily or physical harm or violence, (2) causing fear of bodily or physical harm or violence, (3) causing terror, (4) physically intimidating, and (5) physically harassing. Each one requires specific conduct that creates a psychological effect on another person. For instance, the Kansas Criminal Code requires a "threat" "communicate[] intent to inflict physical or other harm." K.S.A. 21-5111(ff). And while the code does not define the other terms, the Protection from Stalking Act defines "harassment" as a "course of conduct directed at a specific person

18

that seriously alarms, annoys, torments or terrorizes the person." K.S.A. 60-31a02(d)(1). Black's Law Dictionary 1781 (12th ed. 2024) defines "terror" as "[e]xtreme fear." Finally, Merriam-Webster Online Dictionary defines "intimidate" as "to make timid or fearful."

The Nevada statute expands past these bounds by using the terms force and violence, which respectively refer to the "[s]trength or energy exerted" and "[t]he use of physical force." See Black's Law Dictionary 783, 1887 (12th ed. 2024). Cf. Nev. Rev. Stat. § 200.380 (1995) ("The degree of force used is immaterial . . . ."); *Chappell v. State*, 114 Nev. 1403, 1408, 972 P.2d 838 (1998) ("The statute does not require that the force or violence be committed with the specific intent to commit robbery.").

Although my analytical paths differ from the majority's, I agree that the Nevada statute does not trigger a person classification.

PART THREE:  FEDERAL DIVISIBILITY FRAMEWORK & *DANIELS*

This court's supplemental briefing order directed the parties to explain how the holdings in *Busch*, 317 Kan. 308, and *Daniels*, 319 Kan. 340, govern K.S.A. 21-6811(e)(3)(B)'s interpretation because neither party mentioned them in their original briefing. We further instructed them, in addressing these cases, to discuss whether we should consider the divisibility of an out-of-state statute when the question does not implicate a federal constitutional concern, given that the analysis focuses on whether the offense should be classified as a person or nonperson crime under Kansas law. While the *Busch* court did not discuss divisibility, the *Daniels* court relied on divisibility in its analysis.

Regrettably, neither party responds to this court's specific question as to whether divisibility should be considered in the absence of any federal constitutional concern. Evans simply asserts divisibility has no bearing on his case because no party claims he

was convicted under a divisible statute. The State, on the other hand, contends the Nevada statute contains both divisible and indivisible aspects, without explaining why. Cf. *Mathis v. United States*, 579 U.S. 500, 518, n.7., 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016) (acknowledging divisibility inquiry is not a simple or self-evident one); *Descamps v. United States*, 570 U.S. 254, 264, n.2, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013) (same).

The majority also fails to address this issue. Instead, it simply reaffirms *Daniels'* divisibility analysis rather than dispelling any doubts about its utility. 321 Kan. at __, slip op. at 7-11. For my part, I have come to appreciate *Daniels* was wrongly decided and improperly invokes divisibility to analyze an out-of-state statute under Kansas law. It also misapplied that framework to interpret K.S.A. 21-6814 and, in the end, reached incorrect conclusions regarding both classification and the parties' respective burdens.

In *Daniels*, a presentence investigation (PSI) report classified Daniels' 2003 Georgia burglary conviction as a person felony, without any further support beyond the applicable Georgia statute. At sentencing, Daniels conceded the criminal history was correct, and the State offered no details about the Georgia conviction. On appeal, he challenged the 2003 conviction's classification, arguing the Georgia burglary statute was broader than Kansas' definition of a person crime because it could be violated by burgling structures other than dwellings. He contended the conviction must be scored as a nonperson felony, as a matter of law, under K.S.A. 21-6811(e)(3)(B)(iii).

The *Daniels* court's analysis focused on two primary issues: the Georgia statute's divisibility and the statutory burden of proof. First, it determined the Georgia statute was divisible. *Daniels*, 319 Kan. at 344. This statute provided:

"'A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof. . . .' Ga. Code Ann. § 16-7-1(a) (1980)." 319 Kan. at 343.

The *Daniels* court identified three alternative versions of the crime based on the burglary's location: (1) a dwelling house, (2) a structure designed for use as a dwelling, or (3) any other building or vehicle. Because two of the three versions involved a residence or dwelling—matching the criteria for a person felony under K.S.A. 21-6811(e)(3)(B)(i)(h) ("entering or remaining within any residence, dwelling or habitation")—the court held the Georgia conviction was not a nonperson crime as a matter of law. Instead, it noted the classification depended on which specific alternative version Daniels committed. 319 Kan. at 343-45.

Next, the court explained K.S.A. 21-6814 establishes a two-stage process for determining criminal history classification under K.S.A. 21-6811, with a shifting burden of proof. At the initial stage, the State must prove a defendant's criminal history, including the person or nonperson classification, by a preponderance of the evidence. The State is relieved of this burden unless the defendant contests the PSI report with a timely, written notice specifying the exact nature of the error. Only if the defendant files such a notice must the State produce evidence, such as journal entries from the prior conviction's trial, to support its calculation. 319 Kan. at 346-47.

The sentencing court then formally establishes a defendant's criminal history, and stage two begins with the burden of proof shifting to the defendant for any subsequent challenge. Under K.S.A. 21-6814(c), the defendant must prove the established history is wrong by a preponderance of the evidence. So, according to *Daniels*, a defendant challenging a divisible out-of-state statute cannot prevail merely by showing the foreign

21

statute is broader than Kansas law. Instead, they must produce specific documentation, such as the out-of-state charging document or judgment, to prove they were convicted under a nonperson version of the offense. 319 Kan. at 347-49.

The court held Daniels failed to meet his burden because he admitted his criminal history at sentencing and did not provide evidence on appeal to demonstrate he was convicted under the statute's nondwelling (nonperson) version. It affirmed the person-felony classification. 319 Kan. at 349-50.

I believe *Daniels* misunderstood divisibility's application articulated by the United State Supreme Court in *Descamps*. To clarify what divisibility means, *Descamps* provides guidance. After the Government sought to impose an enhanced sentence on Descamps for his prior convictions under the Armed Career Criminal Act (ACCA), Descamps challenged the classification of his California conviction for burglary. See *Descamps*, 570 U.S. at 257 ("[The ACCA] increases the sentences of certain federal defendants who have three prior convictions 'for a violent felony,' including 'burglary, arson, or extortion.'"). He specifically argued burglary under California Penal Code § 459 (2010), which criminalized any entry with intent to commit theft or a felony, was broader than the ACCA's generic "breaking and entering" requirement. The sentencing court disagreed, relying on the prior conviction's record to find his action met the generic definition.

But the Court reversed the sentencing court, holding it violated *Apprendi* by engaging in fact-finding to decide whether Descamps' action satisfied an element (breaking) not contained within the California burglary statute. 570 U.S. at 258-60; see also *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The Court explained that, to avoid an *Apprendi* violation, a sentencing court may employ one of two approaches.

22

When a statute has a single set of elements, it is indivisible, and the sentencing court should apply the categorical approach. When a statute contains alternative elements, it is divisible, and the court should employ the modified categorical approach to consult a limited set of "'reliable materials'"—such as charging papers, plea agreements, and jury instructions—to identify which alternative formed the basis of the conviction. 570 U.S. at 265. The modified approach cannot be used for indivisible statutes. 570 U.S. at 260-62.

Although *Descamps* applied divisibility to ACCA predicate offenses, our court adopted it in *State v. Dickey*, 301 Kan. 1018, 1038-39, 350 P.3d 1054 (2015), for classifying prior convictions under the Kansas Sentencing Guidelines Act. *Dickey* is foundational not only because it was the first Kansas case to adopt *Descamps*, but also because it properly addressed divisibility within the state sentencing law's framework.

In *Dickey*, the PSI report classified Dickey's 1992 juvenile burglary adjudication as a person felony. To do so, it assumed the burglary involved a dwelling. But Kansas' burglary statute in effect at that time did not distinguish between dwellings and nondwellings, nor did it require proof the structure was used or intended for human habitation. Dickey conceded his criminal history at sentencing but then challenged it on appeal, asserting the person-felony classification violated his Sixth Amendment rights under *Descamps* and *Apprendi*. 301 Kan. at 1021-26.

Applying *Descamps*, the *Dickey* court held the multiple, alternative versions of burglary presented in the prior adjudication were irrelevant to classifying it as a person felony because the statute did not require the burglarized structure be a dwelling. Without the "dwelling" element, the adjudication could only have been classified as a nonperson felony. 301 Kan. at 1039-40. In reaching this decision, it emphasized two points. First, a prior conviction based on a divisible statute allows a sentencing court to consult a limited universe of reliable materials to identify which alternative formed the conviction's basis. In this way, divisibility functions as a gatekeeper to determine when resorting to a prior

23

conviction's record is constitutionally permissible. 301 Kan. at 1037-38. Second, Kansas law controls classifying a prior conviction for criminal history purposes, subject to the federal constitutional protections of *Apprendi* and *Descamps*. *Dickey*, 301 Kan. 1018, Syl. ¶¶ 6-7.

Since *Dickey*, our courts have applied divisibility consistently with *Descamps*. For instance, in *State v. Rodriguez*, 305 Kan. 1139, 1154, 390 P.3d 903 (2017), the court held that unless a party (typically the State because it prefers isolating the elements of the out-of-state crime) claims a statute is divisible, courts should not engage in divisibility analysis. In *State v. Hill*, No. 112,545, 2018 WL 1239126, at *1-2 (Kan. 2018) (unpublished opinion), the court rejected the need to apply *Descamps*' divisibility absent federal constitutional concerns. In *State v. Gensler*, 308 Kan. 674, 685, 423 P.3d 488 (2018), the court held that when a statute is indivisible, the modified categorical approach could not be used. In *State v. Schrader*, 308 Kan. 708, 712-13, 423 P.3d 523 (2018), the court noted divisibility inquiry is limited to determining which alternative version of a statute formed the basis of the prior conviction. And in *State v. Gales*, 312 Kan. 475, 485-86, 476 P.3d 412 (2020), the court reaffirmed the holdings from *Hill* and *Gensler*.

Granted, the Legislature's many amendments to K.S.A. 21-6811 means each of these cases interpreted different statutory language, none of which is the same as the language here in *Evans*. But that does not affect our analysis here because these cases discuss divisibility as a matter of federal law and applying divisibility to a prior conviction depends, not on K.S.A. 21-6811 itself, but on relevant out-of-state statutes.

With this in mind, Evans' case has prompted me to revisit *Daniels* because the court applied the divisibility framework even though the parties did not raise any federal constitutional concerns, rendering the sentencing issue purely a matter of state law. I now believe *Daniels* was wrongly decided in this respect.

24

In *Daniels*, the PSI report listed a Georgia burglary conviction with only the statute as support. The State did not attempt to identify the specific version of the burglary statute underlying Daniels' prior conviction. Daniels admitted the conviction was a person felony at sentencing but later challenged that classification on appeal, which he was permitted to do because a defendant may raise an illegal sentencing claim at any time. See K.S.A. 22-3504(a) ("The court may correct an illegal sentence at any time while the defendant is serving such sentence."); *Dickey*, 301 Kan. 1018, Syl. ¶ 4 (a defendant's agreement or silence about the convictions listed in the PSI report may bar later challenges to their existence, but it does not prevent contesting how those convictions are legally classified or counted for criminal history purposes).

Daniels correctly argued the Georgia statute presented in the district court was more expansive than Kansas' definition of a person crime because it could be violated by burgling structures other than dwellings. He also correctly contended that, as a matter of law, the conviction must be scored as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii). But the *Daniels* court rejected his claims and held that because the Georgia statute was divisible (three alternative versions of the crime) and because two versions involved a residence or dwelling, Daniels' Georgia conviction was not a nonperson crime as a matter of law. 319 Kan. at 345.

Essentially, the *Daniels* court improperly used divisibility to classify a prior conviction, when both *Descamps* and our Kansas precedent make clear divisibility is only a tool to determine whether the court may consult a prior conviction's record. See *Descamps*, 570 U.S. at 260-62; *Schrader*, 308 Kan. at 712-13. The *Daniels* court incorrectly employed this federal standard to analyze—classifying prior convictions—an issue controlled by Kansas law. See *Gales*, 312 Kan. at 485-86; *Hill*, 2018 WL 1239126, at *1-2.

Furthermore, *Rodriguez* should have limited the *Daniels* court's analysis to the statutory elements, as provided in the PSI report, under K.S.A. 21-6811(e)(3)(B)(i) (person felony) and (iii) (nonperson felony) because the State failed to identify the specific version of the prior crime Daniels committed. A proper legal analysis under *Rodriguez* would have shown the Georgia statute did not require proof of any of the circumstances listed in subparagraph (B)(i), meaning it should have been classified as a nonperson offense, as a matter of law.

Next, the *Daniels* court was fundamentally incorrect in interpreting K.S.A. 21-6814(c) to require a defendant "later" challenging a divisible statute to produce reliable documentation to prove they were convicted under a nonperson version. See 319 Kan. at 348-49. First, under *Hill* and *Gales*, federal law is irrelevant when the issue is governed by state statute. Second, divisibility is used to identify which alternative version of a prior offense a defendant committed, not to bar a defendant from arguing the out-of-state statute does not require proof of the subparagraph (B)(i)'s circumstances. This is especially poignant because the State made no attempt to determine which alternative applied to Daniels.

Additionally, the *Daniels* court erroneously held he failed to meet his burden because he was required to provide documents on appeal after conceding his criminal history at sentencing. See 319 Kan. at 349-50. Granted, Daniels needed to show the classification was wrong, but he was not required to argue the Georgia statute's divisibility or provide the Georgia record. He raised a purely legal question of whether the Georgia statute provided in the PSI report qualified as a Kansas person crime under K.S.A. 21-6811(e)(3)(B). In other words, the district court erred at the outset when it concluded the Georgia conviction was a person felony because it did not require proof of "entering or remaining within any residence, dwelling or habitation" under subparagraph (B)(i)(h). The district court should have invoked subparagraph (B)(iii), as a matter of law, and held the prior conviction was a nonperson crime.

26

To recap, the *Daniels* court erred by applying federal law to dismiss Daniels' legal argument under state law. The federal divisibility framework is inapplicable when the State does not attempt to identify the specific version of the offense, and the State's failure does not shift the burden to the defendant to produce a record at sentencing or on appeal. If a PSI report lists a prior conviction and the State does not specify which version, the question before an appellate court is whether a district court properly classified the prior conviction, based on what is found in the PSI, under the KSGA. Moreover, to uphold the district court's person-felony classification, the *Daniels* court would have needed to examine the Georgia record. But the district court record was undeveloped because the State neither argued the statute was divisible nor offered reliable materials showing Daniels committed the dwelling version of the burglary crime. And from this, I believe the *Daniels* court had no basis to affirm the district court's person-felony classification as a matter of law.

On a final note, reading K.S.A. 22-3504 (motion to correct an illegal sentence) and K.S.A. 21-6814 (procedures establishing criminal history) together shows K.S.A. 21-6814 governs how a district court establishes a defendant's criminal history as a factual matter consistent with *Apprendi* and *Descamps*. In contrast, the classification of those convictions as person or nonperson offenses is a legal question under K.S.A. 21-6811. Unlike factual challenges governed by K.S.A. 21-6814(d), which require a showing of prejudicial error when raised for the first time on appeal, legal errors in classification may be corrected "at any time" under K.S.A. 22-3504(a). *Dickey* confirms this distinction, explaining that while a defendant's agreement or silence regarding convictions in a PSI report may bar challenges to their existence on appeal, it does not preclude challenges to their legal classification. *Dickey*, 301 Kan. 1018, Syl. ¶ 4. Accordingly, the *Daniels* court erred by applying K.S.A. 21-6814 to reject Daniels' *legal* classification claim.

This leads me to *Busch*, 317 Kan. 308, which came a year before *Daniels*. In *Busch*, the PSI report classified several New Jersey convictions as person felonies: four burglaries and one criminal trespass. For each of these offenses, the report indicated the offense was "residential" by placing that designation in parentheses after the offense name. The *Busch* court correctly held the burglary convictions should be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii) because the New Jersey statute's element "structure" was broader than subparagraph (B)(i)(h) ("residence, dwelling or habitation"). 317 Kan. at 309-13.

But the *Busch* court incorrectly reasoned the PSI report constituted "*evidence* the district court could consider when determining whether the State had carried its burden of proof" to conclude the criminal trespass conviction was properly classified as a person felony. (Emphasis added.) 317 Kan. at 313-14. But see *Gales*, 312 Kan. at 482-85 (although Cal. Penal Code § 460 defined burglary degrees, the record said nothing about Gales' specific degree, so the court focused on § 459 and held it indivisible). Although the *Busch* court did not expressly use the term "divisible," its flawed rationale mirrors the reasoning in *Daniels*. Even if the New Jersey criminal trespass statute were divisible—such that the district court could consult the New Jersey trial record—the parenthetical "residential" is not among the limited, reliable materials *Descamps* permits a court to examine.

Besides, *Busch* is internally inconsistent. For the burglary convictions, the court declined to rely on the "residential" notation in the PSI report but did so for the criminal trespass conviction. 317 Kan. at 313-14. This court should own up to this and hold *Busch* was partially wrong so we may avoid sentencing errors going forward.

For these reasons, I agree Evans' Nevada robbery conviction qualifies as a nonperson felony under K.S.A. 21-6811(e)(3)(B).

WALL, J., concurring:  I join Part One of Justice Biles' concurring opinion. I agree that the use of "shall" in both K.S.A. 21-6811(e)(3)(B)(i) and (iii) creates statutory ambiguity. And when applying the *in pari materia* doctrine and the rule of lenity, subparagraph (B)(iii) prevails "over the conflicting mandate in subparagraph (B)(i)." *State v. Evans*, 321 Kan. ___, ___, slip op.at 15.

But when applying this construction to the Nevada robbery statute, I agree with the majority's holding that the out-of-state conviction must be scored as a nonperson felony. Specifically, a defendant can commit robbery under Nev. Rev. Stat. § 200.380 (1995) by causing fear of harm to property rather than fear of physical harm. 321 Kan. at ___, slip op. at 10. So the out-of-state conviction does not *require* proof that the offender threatened or caused fear of bodily or physical harm or violence as described in K.S.A. 21-6811(e)(3)(B)(i). And K.S.A. 21-6811(e)(3)(B)(iii) requires the sentencing court to score the conviction as a nonperson felony.

Thus, I would vacate Evans' sentence and remand for resentencing.

STEGALL, J., joins the foregoing concurring opinion.

* * *

STANDRIDGE, J., concurring:  I agree that Evans' Nevada robbery conviction must be classified as a nonperson felony under K.S.A. 21-6811(e)(3)(B)(iii). I write separately to explain more fully why the statutory framework adopted in 2019 leads to this result and to address concerns in the separate writing of my colleagues.

29

This case presents an opportunity to reaffirm how the Legislature structured the out-of-state classification scheme and to clarify how subsections (i), (ii), and (iii) function together as a coherent whole. The analysis is not complicated once the statute is read as the Legislature wrote it.

The 2019 amendments to K.S.A. 21-6811(e)(3)(B) created an elements-based test using three rules that form an integrated framework to classify as person or nonperson those out-of-state felonies in an offender's criminal history:

- Subsection (i): An out-of-state conviction shall be classified as a person felony if any listed "person-related" circumstance enumerated in this subsection is *present* in the elements of the out-of-state offense as defined by the convicting jurisdiction.

- Subsection (ii): An out-of-state conviction shall be a person felony if its elements necessarily *prove* the presence of a qualifying person as defined in this subsection.

- Subsection (iii): If the elements of the out-of-state offense do not *require proof* of any circumstance in (i) or (ii), the out-of-state conviction shall be classified as a nonperson felony. K.S.A. 21-6811(e)(3)(B).

Evans claims the district court and the Court of Appeals panel erred in relying solely on K.S.A. 21-6811(e)(3)(B)(i) and (ii) to classify his 2001 Nevada robbery conviction as a person felony. He argues both courts ignored subsection (iii), which requires the Nevada conviction to be classified as a nonperson felony because the elements of the out-of-state offense in 2001 did not *require proof* of any circumstance in (i) or (ii).

At the time of his 2001 conviction, the Nevada statute defined robbery as taking property against a person's will by force, violence, or fear of injury to a person *or*

30

*property*. See Nev. Rev. Stat. § 200.380 (1995). As Evans points out, one could violate the Nevada robbery statute by placing another in fear of injury to *property* rather than fear of bodily or physical harm—the qualifying circumstance under subsection (i)(b). And while the Nevada statute requires the presence of another person, there is no limitation on that person being a charged accomplice or someone with whom the defendant was engaged in the sale, distribution, or transfer of an illegal substance—a circumstance that is expressly excluded under subsection (i)(d). Because the Nevada robbery statute does not *require proof* of an enumerated circumstance under K.S.A. 21-6811(e)(3)(B)(i) or (ii), Evans argues the plain language of subsection (iii) dictates that his Nevada conviction be classified as a nonperson offense.

Evans' argument requires statutory interpretation, the guiding principle of which is to give effect to the Legislature's intent. To determine that intent, courts first look at the statute's plain language, giving the words their ordinary meaning. If the language is clear and unambiguous, courts should not look beyond the text or add meaning that does not appear in the statute. If it is ambiguous, courts turn to canons of construction to resolve the uncertainty. *State v. Gomez*, 320 Kan. 3, 13, 561 P.3d 908 (2025).

Based on Evans' argument, the interpretive question is how K.S.A. 21-6811(e)(3)(B)(i) and (iii) operate together. Specifically, the court must decide whether the Legislature intended the phrase "is present" in subsection (i) to mean that the mere mention of a listed circumstance among the elements of the out-of-state statute automatically makes the conviction a person felony, or whether the phrase should be read in the context of subsection (iii)'s directive that the elements must "require proof" of a listed circumstance. As explained below, the plain language of the statutory text reflects that the Legislature intended subsection (iii) to limit subsection (i):  a listed circumstance must be an essential element of the crime, not just a possible method of committing the crime.

31

*Statutory text and structure*

Legislative intent is best discerned from the plain language and overall structure of the statute. When reading the plain language of K.S.A. 21-6811(e)(3)(B) as a whole, it becomes clear that the Legislature intended subsections (i) and (iii) to operate in tandem to define the boundaries for classifying out-of-state convictions.

Subsection (i) identifies specific "person-related" circumstances that, when required as part of the elements of an out-of-state offense, warrant classification as a person felony. Subsection (ii) further provides that an out-of-state offense be classified as a person felony when the elements of the offense necessarily prove that a person was present during the commission of the offense, excluding persons implicated in the offense. Subsection (iii), in turn, supplies a limiting principle: unless the elements of the out-of-state statute require proof of at least one of these enumerated circumstances, the conviction must be classified as a nonperson felony.

Therefore, subsections (i) and (iii) function as complementary counterparts—opposite sides of the same coin. Subsection (i) articulates specific qualifying circumstances that warrant classification of an offense as a person felony, while subsection (iii) prevents overbroad application of those circumstances. Reading the provisions together ensures that classification turns on the necessary elements of the out-of-state offense, not on hypothetical, alternative, or incidental means by which the crime could be committed.

The suggestion in the separate concurrence that this conclusion requires a prior finding of ambiguity is wrong. Statutory interpretation begins with text. When employing a plain language interpretation, courts consider not only the language itself, but also the specific context in which that language is used and the broader context of the statute as a whole. In this regard, "the doctrine of *in pari materia* has utility beyond those instances

32

where statutory ambiguity exists." *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). As we have explained, "[i]t can be used as a tool to assess whether the statutory language is plain and unambiguous in the first instance, and it can provide substance and meaning to a court's plain language interpretation of a statute." 316 Kan. at 224.

Indeed, reading these two subsections in isolation would render subsection (iii) meaningless and undermine the deliberate structure adopted in the 2019 amendments. See *Northern Natural Gas Co. v. ONEOK Field Servs. Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013) (Courts presume the Legislature does not intend to enact useless or meaningless legislation.). Kansas decisions do not limit the "no meaningless legislation" presumption to situations in which a statute is first declared ambiguous. Our cases often describe it as part of the ordinary task of reading text in context. See, e.g., *Montgomery v. Saleh*, 311 Kan. 649, 655, 466 P.3d 902 (2020) (applying presumption while treating plain language of the statute as dispositive; rejecting an alternative reading because it would render the statute meaningless); *Northern Natural Gas Co.*, 296 Kan. at 918 ("[E]ven if the language of the statute is clear . . . we presume the legislature does not intend to enact useless or meaningless legislation."); *Southwestern Bell Telephone Co. v. Beachner Const. Co.*, 289 Kan. 1262, 1269, 221 P.3d 588 (2009) ("'As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation.'").

Here, the plain language interpretation brings subsection (i) and (iii) into workable harmony by giving meaning to both subsections. A court need not manufacture ambiguity in order to apply a statute as written.

*Prior precedent:* Busch *and* Daniels

My interpretation of the plain language in K.S.A. 21-6811(e)(3)(B) aligns with this court's prior decisions in *State v. Busch*, 317 Kan. 308, 528 P.3d 560 (2023), and

33

*State v. Daniels*, 319 Kan. 340, 554 P.3d 629 (2024). Evans objected to the classification of his Nevada robbery conviction at sentencing, so the State had the burden to establish by a preponderance of the evidence that the out-of-state conviction qualified as a person felony under Kansas law. See K.S.A. 21-6814(c); *Daniels*, 319 Kan. at 346 ("As part of this burden, the State must prove all facts necessary for the district court to make an accurate classification for all scoreable crimes."). That burden required the State to show the elements of the Nevada robbery offense *required proof* of any of the circumstances in subparagraph (B)(i) or (ii) of K.S.A. 21-6811(e)(3). As this court said in *Busch*,

> "K.S.A. 2022 Supp. 21-6811(e)(3)(B)(iii) clarifies our course when an out-of-state statute's definitions of a particular element may broadly encompass, but not require, proof of a particular fact or circumstance: 'An out-of-state conviction . . . for the commission of a felony offense . . . shall be classified as a nonperson felony if the elements of the offense do not *require* proof of any of the circumstances in subparagraph (B)(i).'" 317 Kan. at 313.

Because the Nevada statute *does not require proof* that the offender threatened or caused fear of bodily or physical harm or violence as described in K.S.A. 21-6811(e)(3)(B)(i)(b), and *does not require proof* of the presence of a person other than the defendant, a charged accomplice, or a person engaged with the defendant in a drug transaction as described in K.S.A. 21-6811(e)(3)(B)(i)(d), the State failed to meet that burden here.

This conclusion accords with constitutional limits on judicial fact-finding. The State suggests that applying K.S.A. 21-6811(e)(3)(B) through a "necessarily-proved-circumstance" test could raise concerns under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024). But interpretation of the statute as set forth above avoids those problems. By restricting the inquiry to the statutory elements of the prior offense—rather than the facts underlying the conviction—Kansas courts do not engage in

constitutionally prohibited fact-finding that increases punishment beyond the statutory maximum.

As in *Busch* and *Daniels*, I would hold that the proper classification of an out-of-state conviction under K.S.A. 21-6811(e)(3)(B) turns on the statutory elements of the offense, not the underlying facts. When the elements of the out-of-state statute are broader than the enumerated circumstances in subsections (i) and (ii), it cannot be said that the statute "require[s] proof" of any of these circumstances; in such case, the conviction must be scored as a nonperson felony under subsection (iii). Here, the 2001 Nevada robbery statute encompasses conduct that extends beyond the Kansas person-crime circumstances under K.S.A. 21-6811(e)(3)(B)(i) and (ii). Because the statute's elements do not require proof of a listed circumstance, Evans' Nevada robbery conviction must be classified as a nonperson felony. This interpretation gives effect to the statute's plain language, preserves the limiting function of subsection (iii), and remains consistent with our reasoning in *Busch* and *Daniels*.

For the above reasons, I concur in the judgment reversing the Court of Appeals and the district court, vacating Evans' sentence, and remanding for resentencing.

ROSEN, C.J., joins the foregoing concurring opinion.